UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CASE NO: 3:06CV-62-R

KENTUCKY ASSOCIATED GENERAL CONTRACTORS SELF-INSURERS' FUND PLAINTIFF

v.

OLD REPUBLIC INSURANCE COMPANY, et al. DEFENDANTS

**MEMORANDUM OPINION**

This matter is before the Court upon the Defendants' Motion to Exclude Witness Ken D. Howard (Docket #83). The Plaintiff responded (Docket #98) and the Defendants replied (Docket #102). This matter is now ripe for adjudication. For the following reasons, the Defendants' Motion is **DENIED.**

**BACKGROUND**

Plaintiff is the Kentucky Associated General Contractors Self Insurers' Fund (AGC-SIF). Defendants are the Old Republic Insurance Company (Old Republic), a foreign insurance carrier, and Wexford Underwriting Managers, Inc. (Wexford), a division of Old Republic. On January 20, 2006, AGC-SIF filed a declaratory judgment action in Jefferson Circuit Court to determine the liability of Old Republic and/or Wexford to pay excess workers' compensation benefits allegedly owed under two policies of excess workers' compensation insurance issued to AGC-SIF by Old Republic in 1987 and 1988, respectively. On February 3, 2006, the Defendants removed the action to this Court on diversity of citizenship grounds.

According to AGC-SIF, five claimants were injured in the course and scope of their employment and filed claims for workers' compensation benefits against their employers. Their employers were insured for workers' compensation by AGC-SIF, and their claims are subject to

the terms of one of the two excess workers' compensation policies issued to AGC-SIF by Old Republic. Pursuant to the terms of the excess workers' compensation policies, Old Republic is obligated to pay benefits and awards in excess of the self-insured retention level of $250,000.

AGC-SIF claims that each of the claimants received benefits and/or awards from either AGC-SIF, the Kentucky Workers' Compensation Board, or both. AGC-CIF asserts that the benefits due the claimants under the self-insured retention of $250,000 per claim has been consumed, or apparently will be, before the benefits are fully paid to the claimants. AGC-SIF alleges that its third-party administrator, Ladegast & Heffner Claims Services, Inc. (L&H), provided proper notice of the claims as required by the excess insurance policies to Old Republic through the form of "Quarterly Reports," but Old Republic has never paid the benefits and awards. The Defendants deny liability for the claims and deny that Old Republic received sufficient notice of the claims to warrant coverage under the policies in issue.

In the instant motion, the Defendants seek to exclude or limit the testimony and/or report of the Plaintiff's proffered expert witness Ken D. Howard (Mr. Howard), alleging that Mr. Howard's testimony does not meet the standards of FRE 103(d), 402, 403, and 702.

**STANDARD**

Rule 702 of the Federal Rules of Evidence (FRE 702) admits testimony by experts. FRE 702 states:

> [i]f scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

In *Daubert v. Merrell Dow Pharmaceuticals, Inc*., 509 U.S. 579 (1993), the Supreme Court interpreted FRE 702 as requiring the trial judge to ensure that an expert's testimony is both reliable and relevant to the case at hand. *Id*. at 589. In *Daubert*, the Court identified a nonexhaustive list of factors to assist courts in evaluating the reliability of the scientific theory or methodology upon which an expert's opinion is based. These include whether the theory or technique can be or has been tested; whether it has been subjected to peer review; whether it has a known or potential rate of error; and whether it has general acceptance in the scientific community. *Id*. at 593-94.

*Daubert's* gatekeeping obligation applies not only to "scientific" testimony, but to all expert testimony. In *Kumho Tire Company, Ltd. v. Carmichael*, 526 U.S. 137 (1999), the Supreme Court extended *Daubert* to nonscientific expert testimony, requiring that, "where such testimony's factual basis, data, principles, methods, or their application are called sufficiently into question, the trial judge must determine whether the testimony has "a reliable basis in the knowledge and experience of [the relevant] discipline." *Id*. at 149. Thus, *Daubert's* admissibility considerations are relative ones, depending upon the type of expert and nature of the proffered testimony. Courts must act as "gatekeepers" to ensure that the expert is duly qualified to render an expert opinion on the issues to be decided, that his testimony will assist the trier of fact, and that the proffered testimony is reliable. *Daubert*, 509 U.S. at 589.

**DISCUSSION**

AGC-SIF has identified Mr. Howard to offer expert testimony as to whether its notice to Old Republic, through its third party administrator Ladegast & Heffner (L&H), was sufficient to warrant coverage under the two excess workers' compensation policies issued by Old Republic

that are in issue. Specifically, Mr. Howard intends to offer testimony that AGC-SIF operated in a good faith attempt to provide Old Republic with accurate and timely reports on the cases that were deemed to have the potential of impacting the excess insurance policies. Mr. Howard will opine that the Plaintiff gave adequate notice on the claims in issue, with the possible exception of one claim because he felt he did not have enough information to adequately evaluate the case.

The Defendants allege (1) that Mr. Howard is not qualified, either by his knowledge, skill, or experience, to provide any of his proffered opinions, and (2) that his opinions are based upon an insufficient factual basis to meet the applicable test of the admissibility of expert opinions.

**1. Mr. Howard's Qualifications to Testify as an Expert**

The Defendants contend that Mr. Howard is not qualified to offer his opinions because he has no experience or training in the front-line adjusting or reporting of workers' compensation claims to excess insurance carriers. The Defendants assert that Mr. Howard's principal area of expertise is in reinsurance, not excess insurance. The parties have not provided definitions of these terms, but it appears that reinsurance is "insurance by another insurer of all or a part of a risk previously assumed by the direct-writing company." Webster's Third New International Dictionary 1915 (1993). Excess insurance is "insurance in which the underwriter's liability does not arise until the loss exceeds a stated amount and then only on the excess above that amount." *Id.* at 792.

As proof that Mr. Howard is not qualified to testify as an expert in this matter, the Defendants cite portions of Mr. Howard's deposition, where he states that he has no professional training on excess insurance policies, has never been employed by an excess carrier, and has

never been employed by a company where his duties were reporting to an excess carrier. (Howard Depo., pp. 61, 68, 93-94). Further, the Defendants assert that, despite AGC-SIF's assertion to the contrary, "it is well known in the insurance industry that excess insurance and reinsurance are two difference kinds of coverages and policies entirely." The Defendants have not, however, provided the Court with evidence to support this claim. In addition, as if to signal Mr. Howard's confusion of the issues, the Defendants point out that there were multiple instances in his deposition where he began talking about reinsurance and had to be reminded that this is a case involving excess insurance policies. It also does not appear that Mr. Howard has ever testified as an expert in an excess insurance matter.

In response, AGC-SIF asserts that Mr. Howard is qualified because he has had thirty-two years professional experience in dealing with insurance claims management and adjustment and has held positions involving both workers' compensation and reinsurance. He has served as Deputy Executive Director of the Kentucky Office of Insurance, was Policy holder Services Manager and Product Development Manager for Kentucky Employers Mutual Insurance, a workers' compensation carrier, was Vice President of BEP International Corp. (n/k/a Aon Re Worldwide), a reinsurance broker, and, among other duties, trained service staff in the wording of reinsurance agreements at Sullivan Payne Company, a reinsurance intermediary. Further, in his deposition Mr. Howard testified that while he has no experience in the reporting of excess insurance claims, he has had the opportunity to review excess insurance agreements many times over the course of his career.

While this case involves excess insurance policies, and not reinsurance, AGC-SIF maintains, and Mr. Howard testified in his deposition, that the reporting aspects of reinsurance

and excess insurance are very similar. AGC-SIF asserts that Mr. Howard's knowledge and skill acquired in the area of reinsurance qualifies him to testify on reporting matters in the area of excess insurance.

AGC-SIF, however, has not provided the Court with information regarding the similarities between reinsurance and excess insurance that thus qualify Mr. Howard to offer expert testimony on an excess insurance matter. All AGC-SIF has proffered on this subject is the following statement from Mr. Howard made during his deposition:

> Although there are some differences in how coverage is provided between excess policies and reinsurance treaties, when it gets to the report aspect they're very similar. I mean, in fact, there will probably be some folks out there that would not be able to see the distinction between excess insurance and reinsurance. In fact, many people -- many carriers who have excess insurance call it reinsurance.

AGC-SIF had not explained how this statement should make a difference concerning the admissibility of Mr. Howard's testimony. While some people may not understand the distinction between reinsurance and excess insurance, that is not the issue here. This is quite clearly an excess insurance case.

Similarly, however, the Defendants have not provided the Court with authority to support their assertion that the areas are too dissimilar to warrant qualifying Mr. Howard as an expert in this matter.

Mr. Howard has had many years experience in the insurance industry in general, he has a background in worker's compensation in general, and he is not a stranger to excess insurance contracts and agreements. The Court is reluctant to exclude Mr. Howard's testimony based upon the Defendants' contention that extensive experience in reinsurance does not qualify a person to testify as an expert in an excess insurance case when this contention is countered by the

Plaintiff's assertion that the areas are substantially similar. The Defendants's concern over Mr. Howard's qualifications speaks more to the weight that will be accorded to his testimony, not its admissibility. Thus, the Court finds that Mr. Howard is qualified to testify as an expert in this matter.

**2. Examination of the Individual Claims Files and Familiarity with the Case**

The Defendants also argue that Mr. Howard's testimony is not admissible because his opinions are based upon an insufficient factual basis. In addition, they argue that he lacks sufficient personal knowledge of the issues and pertinent documents in this case, because he did not examine the individual claims files of the five claimants or the reserve or medical histories for the five claims before formulating his opinions. The Defendants argue that Mr. Howard cannot offer opinions as to the propriety of the management of the claims, particularly the adequacy of the reserving and reporting, without having examined the files themselves, which are "among the principal documents in this case."

In formulating his opinions, Mr. Howard reviewed the two Old Republic policies in question and the Quarterly Reports that AGC-SIF provided to Old Republic. Mr. Howard's opinion is that the Quarterly Reports "were done in the appropriate and timely fashion as required" by the policies and that AGC-SIF "operated in a good faith attempt to provide [Old Republic] with accurate and timely reports on those cases that were deemed to have the potential of impacting" the excess insurance policies.

The Defendants assert that this is simply not enough, because it was necessary to conduct an examination of the claims files, including medical records and reserve histories, and to measure those reserve histories against the medical records, because the amounts paid and

incurred at a certain dollar amount were among the triggers for reporting to Old Republic under the terms and conditions of the policies. The Defendants argue that any assertion that the Quarterly Reports were sufficient notice under the terms and conditions of the subject policies must work from the assumption that the reports were accurate, and Mr. Howard had no way of knowing whether the reports were accurate because he never reviewed the claims files.

In response, AGC-SIF asserts that it only requested that Mr. Howard review, among other things, the two Old Republic policies and the Quarterly Reports. It did not request that he review the claims files. Instead, AGC-SIF argues that Mr. Howard's opinions regarding its timely notice to Old Republic were properly formulated based on his review of those documents, coupled with his experience in workers' compensation and reinsurance. AGC-SIF contends that Mr. Howard's opinion regarding notice was properly formulated by reviewing the policies' requirements regarding notice, and comparing that against the information contained in the Quarterly Reports. In Mr. Howard's opinion, the policies did not require any more information to be contained in the reports of claims than that which AGC-SIF transmitted in the Quarterly Reports. Thus, Mr. Howard opines, the reports served as adequate notice under the policies.

There appears to be no established methodology for formulating opinions regarding notice in excess insurance cases; at least, neither party has provided the Court with evidence of an accepted methodology. The Defendants basically contend that Mr. Howard's testimony is unreliable because he did not arrive at his opinions in the manner their expert arrived at his opinions or in the manner they would expect such an expert to craft his opinions. This, however, does not necessarily make Mr. Howard's testimony unreliable and inadmissible. The Court finds

that the Defendants' objections to Mr. Howard's proffered testimony speak to the weight of his opinions, not their admissibility. Therefore, the Defendants' challenges to Mr. Howard's opinions are better left for trial.

## CONCLUSION

For the foregoing reasons, the Defendants' Motion to Exclude Witness Ken D. Howard is **DENIED.**

An appropriate order shall issue.

Thomas B. Russell

**Thomas B. Russell, Judge**
**United States District Court**

February 7, 2008