UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCY
LOUISVILLE DIVISION
CASE NO: 3:06CV-62-R

KENTUCKY ASSOCIATED GENERAL CONTRACTORS
SELF-INSURERS' FUND                                                                                    PLAINTIFF

v.

OLD REPUBLIC INSURANCE COMPANY, et al.            DEFENDANTS

## MEMORANDUM OPINION

This matter is before the Court upon the Defendants' Motion to Exclude C. Stephen Taylor (Docket #84).  The Plaintiff responded (Docket #94) and the Defendants replied (Docket #101).  This matter is now ripe for adjudication.  For the following reasons, the Defendants' Motion is **DENIED**.

## BACKGROUND

Plaintiff is the Kentucky Associated General Contractors Self Insurers' Fund (AGC-SIF). Defendants are the Old Republic Insurance Company (Old Republic), a foreign insurance carrier, and Wexford Underwriting Managers, Inc. (Wexford), a division of Old Republic.  On January 20, 2006, AGC-SIF filed a declaratory judgment action in Jefferson Circuit Court to determine the liability of Old Republic and/or Wexford to pay excess workers' compensation benefits allegedly owed under two policies of excess workers' compensation insurance issued to AGC-SIF by Old Republic in 1987 and 1988, respectively.  On February 3, 2006, the Defendants removed the action to this Court on diversity of citizenship grounds.

According to AGC-SIF, five claimants were injured in the course and scope of their employment, and filed claims for workers' compensation benefits against their employers.  Their employers were insured for workers' compensation by AGC-SIF, and their claims are subject to

the terms of one of the two excess workers' compensation policies issued to AGC-SIF by Old Republic. Pursuant to the terms of the excess workers' compensation policies, Old Republic is obligated to pay benefits and awards in excess of the self-insured retention level of $250,000.

AGC-SIF claims that each of the claimants received benefits and/or awards from either AGC-SIF, the Kentucky Workers' Compensation Board, or both. AGC-CIF asserts that the benefits due the claimants under the self-insured retention of $250,000 per claim has been consumed, or apparently will be, before the benefits are fully paid to the claimants. AGC-SIF alleges that its third-party administrator, Ladegast & Heffner Claims Services, Inc. (L&H), provided proper notice of the claims as required by the excess insurance policies to Old Republic through the form of "Quarterly Reports," but Old Republic has never paid the benefits and awards. The Defendants deny liability for the claims and deny that Old Republic received sufficient notice of the claims to warrant coverage under the policies in issue.

In the instant motion, the Defendants seek to exclude or limit the testimony and/or report of the Plaintiff's proffered expert witness C. Stephen Taylor (Mr. Taylor), alleging that Mr. Taylor's testimony does not meet the standards of FRE 103(d), 402, 403, and 702.

## STANDARD

Rule 702 of the Federal Rules of Evidence (FRE 702) admits testimony by experts. FRE 702 states:

> [i]f scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

In *Daubert v. Merrell Dow Pharmaceuticals, Inc*., 509 U.S. 579 (1993), the Supreme Court interpreted FRE 702 as requiring the trial judge to ensure that an expert's testimony is both reliable and relevant to the case at hand. *Id*. at 589. In *Daubert*, the Court identified a nonexhaustive list of factors to assist courts in evaluating the reliability of the scientific theory or methodology upon which an expert's opinion is based. These include whether the theory or technique can be or has been tested; whether it has been subjected to peer review; whether it has a known or potential rate of error; and whether it has general acceptance in the scientific community. *Id*. at 593-94.

*Daubert's* gatekeeping obligation applies not only to "scientific" testimony, but to all expert testimony. In *Kumho Tire Company, Ltd. v. Carmichael*, 526 U.S. 137 (1999), the Supreme Court extended *Daubert* to nonscientific expert testimony, requiring that, "where such testimony's factual basis, data, principles, methods, or their application are called sufficiently into question, the trial judge must determine whether the testimony has "a reliable basis in the knowledge and experience of [the relevant] discipline." *Id*. at 149. Thus, *Daubert's* admissibility considerations are relative ones, depending upon the type of expert and nature of the proffered testimony. Courts must act as "gatekeepers" to ensure that the expert is duly qualified to render an expert opinion on the issues to be decided, that his testimony will assist the trier of fact, and that the proffered testimony is reliable. *Daubert*, 509 U.S. at 589.

## DISCUSSION

AGC-SIF has identified Mr. Taylor (1) to provide a summary of fourteen Reserve & Compliance Reviews of AGC-SIF's third-party administrator L&H conducted by Milliman, Inc. (Milliman); and (2) to review and comment on the report of Hon. David W. O'Brien, an expert

designated by Old Republic.

The Defendants allege that Mr. Taylor's opinions are based upon an insufficient factual basis to meet the applicable test of the admissibility of expert opinions.

**1. Summaries of the Milliman Reserve & Compliance Reviews of L&H**

In his proffered report, Mr. Taylor provides a summary of the findings of fourteen Milliman Reserve & Compliance Reviews of L&H (Milliman reviews). . The first Milliman review was conducted in 1993, and they have been conducted annually since 1995. The most recent review included in the report was conducted in January 2007. During this time, L&H has provided full third party administration for AGC-SIF's workers' compensation claims. L&H processes the benefits for all work related injuries attributable to operations which have elected to obtain their workers' compensation coverage from AGC-SIF.

Mr. Taylor has thirty-three years experience in the insurance claims industry and has been employed by Milliman for the past thirteen years as a claims management consultant. He has previously testified as an expert in the areas of workers' compensation claims management and reserving practices. Further, he personally generated the last six Milliman reviews, following on site reviews of the L&H claim operations.

The Defendants have not attacked Mr. Taylor's personal qualifications to testify as an expert in this matter, nor have they argued that Milliman's review procedures were inadequate. Instead, the Defendants argue that because Mr. Taylor has only been personally involved in creating the past six Milliman reviews, he is not qualified to provide summaries of the other eight audits conducted by other Milliman professionals. The Defendants also argue that because these summaries do not address the five claims in issue, they are somehow irrelevant. Each

Milliman review was based on L&H's handling of a random sampling of at least fifty AGC-SIF claims files[1]; Milliman reviewed a sample of the whole instead of reviewing every workers' compensation claim submitted to AGC-SIF and administered by L&H.

The Court finds that Mr. Taylor's extensive experience in generating the past six Milliman reviews qualifies him to present his summaries of the findings contained in the first eight Milliman reports. According to AGC-SIF, Mr. Taylor was retained to provide summaries of the Milliman reviews, which is what he did. The summaries, contained in Section II of his report, do no more than summarize the contents of each review. Given Mr. Taylor's extensive experience as a claims management consultant, and his personal experience in generating these reviews for Milliman, the Court believes he is qualified to summarize the contents of both the reports he did and did not personally generate. Further, Mr. Taylor may use his expertise in this area to explain what these reviews mean and what they reflect about L&H's claims operations.

The Court also does not believe Mr. Taylor's summaries should be excluded simply because the Defendants find them to be too general for their liking. It appears that none of the Milliman reviews directly addressed the five claims in issue, but that does not present a reason for excluding Mr. Taylor's testimony. It is hardly novel that in conducting a review of an entire administrative procedure Milliman reviewed a random sample of the many worker's compensation claims L&H administered for AGC-SIF instead of the numerous whole. The Court believes that Milliman's findings regarding L&H's procedures as a whole over time may be relevant to understanding the specific claims in issue.

This finding does require qualification, however. While Mr. Taylor may offer general

---

[1] Beginning in 2005, Milliman began reviewing 120 AGC-SIF claims files.

opinions regarding the quality L&H's claims handling, he may not specifically offer an opinion, based on the contents of the fourteen reviews, that the five claims in issue were handled and reported satisfactorily. Such an opinion would be too great an analytical leap and not based on any identifiable or reliable methodology presented to the Court. There is no evidence that any of the five claims was ever included in a Milliman review. As discussed below, Mr. Taylor never personally reviewed the five claims files in issue. Instead, his knowledge of the contents of the claims files is limited to the information included in the report of the Defendant's expert, Hon. David W. O'Brien.

However, the Court does believe that Mr. Taylor's summation of Milliman's findings regarding the administrative procedures L&H employed in administering workers' compensation claims for AGC-SIC is admissible and may be helpful to the finder of fact. The jury may draw such conclusions from that testimony as they wish.

**2. Review of Hon. David W. O'Brien's Expert Report**

The second portion of Mr. Taylor's proffered expert report is a "review and comment" on the report of Hon. David W. O'Brien (Judge O'Brien). In his report, Mr. Taylor states that Judge O'Brien's report includes a review of the claims handling, administration and management by AGC-SIF and L&H for the five claims in issue. Section IV of Mr. Taylor's report, which is dedicated to his review of Judge O'Brien's report, is divided by each of the five claimants. Each subsection contains Mr. Taylor's assessment of Judge O'Brien's evaluation of the notice that was required by the policies and the notice that was actually provided to Old Republic for each claim.

However, Mr. Taylor notes that he was not asked to and did not review the five

underlying claims files in formulating his opinions regarding Judge O'Brien's report. He did review some of the "Quarterly Reports" developed by AGC-SIF as a reporting format as well as an unidentified "notice" letter submitted by AGC-SIF to Old Republic. However, despite what appears to be an assertion to the contrary by AGC-SIF in its response to the motion to exclude, Mr. Taylor testified in his deposition that he did not review the actual Quarterly Reports for any of the five claims in issue or know the function of the reports as far as L&H was concerned. (See Taylor Depo., p.58). Instead, his knowledge of the contents of the Quarterly Reports stems from Judge O'Brien's discussion of the reports. It is undisputed that Judge O'Brien reviewed the contents of all five claims files along with the Quarterly Reports sent regarding each claim.

Mr. Taylor's review of Judge O'Brien's expert report leads him to conclude that, contrary to Judge O'Brien's conclusion, "L&H met the reporting requirements" under the terms of the excess insurance policies in question, as those policies were described to him by counsel. Mr. Taylor did not personally review the policies either.

The Defendants first assert that Mr. Taylor's proffered testimony should be excluded because it does not rely upon reliable methods and principles and is not sufficiently based in fact. *Daubert*, 509 U.S. at 592-593; *Kumho Tire*, 526 U.S. at 141-42; 151-52.

In his deposition, Mr. Taylor testified that he could not offer an opinion as to whether a standard of care was met by L&H or KGC-SIC in the handling and administration of the five claims files in issue because he had not reviewed the individual files themselves. He also testified that normally, when he evaluates the sufficiency and adequacy of reserves set by claims adjusters in workers compensation claims, he examines either the hard copy claims files or system-generated electronic reports. He does this in order to look at the actual medical records

7

of the claimants and determine what the past medical treatments and costs have been in order to attempt to project some type of future assignment of reserves. He testified that this individual assessment is necessary because "[e]ach individual claim stands on its own merits, and each individual brings to the scheme of reserving their own related and unrelated conditions associated with the work comp claim."

The Defendants argue that because Mr. Taylor normally evaluates individual claims files when evaluating reserves, yet failed to do so here before offering opinions on the claims handling of the files at issue in this case, his testimony should be excluded because he did not exercise the "same level of intellectual rigor" he employs in his usual profession. *Kumho Tire*, 526 U.S. at 152. In correlation, the Defendants also assert that an assessment of whether the notice provided to Old Republic by L&H for AGC-SIF was proper must rely in part upon an assessment of whether the five subject claims files were appropriately reserved. According to the Defendants, under the excess insurance policies, total incurred costs of a particular dollar amount were a principal trigger for reporting to the excess carrier. Mr. Taylor's only information regarding the reserve history on the five claims was taken from Judge O'Brien's report.

The Defendants also assert that if Mr. Taylor was retained to offer opinions on the adequacy of the notice provided to Old Republic through the Quarterly Reports, his failure to examine those reports and to instead rely on Judge O'Brien's assessment of those reports makes little sense. Mr. Taylor testified in his deposition that the Quarterly Reports contain "information more substantial" than the required notice information identified by Judge O'Brien. The Defendants argue that Mr. Taylor could not have properly formulated this opinion without

having ever seen the Quarterly Reports himself.

AGC-SIF says little to rebut these argument, but maintains that Mr. Taylor was not retained to exclusively comment on the reserves, and his alleged failure to employ the same methods he use in evaluating the sufficiency of reserves, when he was retained to evaluate the sufficiency of notice, is of no consequence. AGC-SIF believes this disagreement is better left for trial.

AGC-SIF's rests its argument that the Defendant's challenges to Mr. Taylor's testimony are better left for trial on a recent decision from the United States District Court for the Eastern District of Kentucky, *Republic Servs. v. Liberty Mut. Ins. Co.*, 2007 U.S. Dist. LEXIS 3140 (E.D. Ky. Jan. 12, 2007). There, the Defendant insurance carrier/claims administrator challenged the admissibility of the opinions of one of the Plaintiff's experts in part because, although he reviewed all of the claims files he was asked to review, he "did not perform an adequate investigation, did not review readily available information, and did not understand portions of the information provided to him." *Id.* at *25. The Defendant also argued that he "did not review any written discovery responses, speak with a single case manager, injured worker or supervisor" and "could not identify or apply multiple phrases and notations contained in the Claims Files." *Id.* at *25-26. In essence, the Defendant argued that the expert should have conducted an independent investigation of the claims he was retained to review.

The court rejected the notion that such an independent investigation was required in order to form an opinion based upon a review of claims files and found that the expert's unfamiliarity with certain notations in the claims files went to the weight of his opinion and did not justify outright exclusion of his testimony. *Id.* at *26.

9

This case may be distinguished from the situation at hand, however, because unlike the expert in Republic, Mr. Taylor never examined the individual claims files in any capacity. By all accounts, he has never seen them. The Defendants here do not challenge the adequacy of Mr. Taylor's investigation of the claims; instead, they argue that Mr. Taylor's opinions are unreliable because he never investigated the claims at all, and instead relied on the information provided by their own expert through his expert report.

Given all of this, however, the Court finds that nothing presented by AGC-SIF justifies the exclusion of Mr. Taylor's expert testimony. He is well qualified to testify as an expert in this area, and the Defendants' arguments speak to the weight of Mr. Taylor's testimony, not its admissibility. The Defendants have cited no law stating that as an expert in this type of matter Mr. Taylor was required to conduct a review of the individual claims files and Quarterly Reports submitted for each claim before reviewing Judge O'Brien's expert report and formulating his own opinion regarding notice. The Defendants may challenge Mr. Taylor's opinions, and the evidence he reviewed or failed to review, during cross-examination at trial.

## CONCLUSION

For the foregoing reasons, the Defendants' Motion to Exclude C. Stephen Taylor is **DENIED**.

An appropriate order shall issue.