UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCY
LOUISVILLE DIVISION
CASE NO: 3:06CV-62-R

KENTUCKY ASSOCIATED GENERAL CONTRACTORS
SELF-INSURERS' FUND                                                      PLAINTIFF

v.

OLD REPUBLIC INSURANCE COMPANY, et al.                       DEFENDANTS

## MEMORANDUM OPINION

This matter is before the Court upon the Defendants' Motion for Summary Judgment (Docket #87).  The Plaintiff responded (Docket #97), and the Defendants replied (Docket #103). This matter is ripe for adjudication.  For the following reasons, the Defendants' Motion for Summary Judgment is **DENIED.**

## BACKGROUND

Plaintiff is the Kentucky Associated General Contractors Self Insurers' Fund (AGC-SIF). Defendants are the Old Republic Insurance Company (Old Republic), a foreign insurance carrier, and Wexford Underwriting Managers, Inc. (Wexford), a division of Old Republic (hereinafter referred to collectively as "Old Republic").  On January 20, 2006, AGC-SIF filed a declaratory judgment action in Jefferson Circuit Court to determine the liability of Old Republic and/or Wexford to pay excess workers' compensation benefits allegedly owed under two policies of excess workers' compensation insurance issued to AGC-SIF by Old Republic in 1987 and 1988. On February 3, 2006, the Defendants removed the action to this Court on diversity of citizenship grounds.

AGC-SIF is a self-insured fund providing workers' compensation insurance to general contractors.  For each year of its workers' compensation program, it secured a policy of excess

insurance to provide indemnity for the AGC-SIF Workers' Compensation Program's (AGC-SIF WC Program) per-occurrence compensation liabilities above a $250,000 self-insured retention (SIR).  Old Republic underwrote the excess workers' compensation insurance coverage for AGC-SIF under Old Republic policies WEXS-175 for the policy period of March 14, 1987 through March 14, 1998, and WEXS-175A for the policy period of March 14, 1988 through March 14, 1989 (together, the "Old Republic policies).  Pursuant to the terms of the policies, Old Republic is obligated to pay benefits and awards in excess of the SIR of $250,000.

The most pertinent section of both Old Republic policies for this action is Part 8, which provides, in its entirety, in both policies:

PART 8. ADMINISTRATION AND REPORTING OF CLAIMS

The Insured shall be responsible for the investigation, settlement, defense or appeal of any claim made or suit brought, or proceeding instituted against the Insured and shall give immediate notice to Wexford Underwriting Managers upon learning of any of the following:

(a) any claim, suit or proceeding that appears to involve
indemnity by the Company;

(b) any occurrence, claim, award or proceeding judgment
which exceeds 50% of the Retention stated in Item 5 of the Declarations;

(c) any occurrence which causes injury to two or more employees

(d) any case involving:
    (1) amputation of a major extremity;
    (2) brain or spinal cord injury;
    (3) death;
    (4) disability for a period of nine months or more;
    (5) permanent total disability as defined in the Workers' Compensation Act of the applicable state named in Item 3 of the Declarations;
    (6) any second or third degree burn of 25% or more of the body.

(e) the reopening of any case in which further award might involve liability of the Company.

2

The Insured shall make no voluntary settlement involving loss to the Company except with written consent of Wexford Underwriting Managers.

The Insured shall forward promptly to Wexford Underwriting Managers any information it may request on the individual occurrences, claims, or cases.  The Insured shall render to Wexford Underwriting Managers within 45 days of the end of the contract period an experience report, upon a form satisfactory to Wexford Underwriting Managers showing in detail the amounts disbursed during the contract period in settling claims and the estimated future payments on, or reserves for, outstanding claims.

The Company, at its own election and expense, and in addition to any indemnity for claim expenses provided by this Policy, shall have the right but not the duty to participate with the Insured in, or to assume in the name of the Insured control over, the investigation, settlement, defense or appeal of any claim, suit or proceeding which might involve liability of the Company.

At issue here are the claims of five workers injured in the course and scope of their employment with employers insured for workers' compensation by AGC-SIF during the coverage period of one of the two Old Republic policies.  The five claimants are:

(1) Jimmie Bristoe, injured on August 19, 1987, when he was struck in the head with a high pressure hose.

(2) Terry Pehm, injured on June 6, 1988, when he fell from a ladder while working, crushing both heels and injuring his ankles.

(3) Terry Goldsmith, injured June 10, 1987, in a fall when the platform on which he was standing collapsed.

(4) Billy Townsend, injured June 6, 1988, when he fell from a ladder onto a concrete floor, causing compound fractures in both of his heels.

(5) Sylvester Hale, injured on May 10, 1988, from carbon monoxide poisoning.

AGC-SIF asserts that the benefits due the claimants under the SIR of $250,000 per claim

has been consumed, or will be, before the benefits are fully paid to the claimants.  Old Republic denies liability for the claims and also denies that it received sufficient notice of the claims, as required by the terms of Part 8 of the polices, to warrant excess coverage for the claims. Therefore, AGC-SIF has requested that this Court determine whether Old Republic is responsible for providing indemnification for workers' compensation benefits, costs, and expenses incurred, for amounts in excess of the $250,000 SIR for each claim.

The Plaintiff employs a third-party administrator, Ladegast & Heffner Claims Services, Inc. (L&H) to provide full third-party administration for all of its worker's compensation claims. L&H has served as AGC-SIF's full third-party administrator (TPA) since 1986.  AGC-SIF relies solely on L&H for the administration of the AGC-SIF WC Program and for the handling, administration and adjusting of the workers' compensation claims that arise under the program. Of note in this action is the fact that in February 1989, L&H's offices, and nearly all of its records, were destroyed by fire.

The Plaintiff argues that L&H provided proper notice of four of the five claims as required by Part 8 of the excess insurance policies through the form of "Quarterly Reports," and proper notice for the fifth claim via other means, but Old Republic has never paid the benefits and awards that are due on those claims.  Old Republic argues that it is not responsible to indemnify AGC-SIF for those benefits and awards in excess of the $250,000 SIR for each of the five claims because the Quarterly Reports, and other means, did not provide the "immediate notice" required in Part 8 of the Old Republic policies.

### STANDARD

Summary judgment is available under Fed. R. Civ. P. 56(c) if the moving party can

establish that the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law."  In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"[N]ot every issue of fact or conflicting inference presents a genuine issue of material fact." *Street v. J. C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989).  The test is whether the party bearing the burden of proof has presented a jury question as to each element in the case.  *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996).  The plaintiff must present more than a mere scintilla of evidence in support of his position; the plaintiff must present evidence on which the trier of fact could reasonably find for the plaintiff.  *See id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)).  Mere speculation will not suffice to defeat a motion for summary judgment: "the mere existence of a colorable factual dispute will not defeat a properly supported motion for summary judgment.  A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate." *Moinette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1177 (6th Cir. 1996).

In Kentucky, the interpretation and construction of insurance contract provisions are questions of law for the court, unless disputed facts are involved.  *Charter Oak Fire Ins. Co. v. Coleman*, 273 F. Supp. 2d 903, 906 (W.D. Ky. 2003) (citing *Ayers v. C & D General Contractors*, 237 F. Supp.2d 764, 768 (W.D. Ky. 2002)).  The Court must "construe the contract against the insurer," but must not "do so in such a way that changes the purpose of the contract."  *Id.*  "An

insurance policy is to be liberally construed in favor of the insured, if the language is ambiguous, and the policy is susceptible to more than one reasonable interpretation." *Id.* "Exclusions should be strictly construed and must be clearly stated to apprise the insured of the limitation." *Id.* Where an exclusion is susceptible to two reasonable interpretations, the Court must adopt the interpretation favorable to the insured. *Id.* However, the Court must still interpret that policy in a manner consistent with the parties' intent and cannot utilize a nonexistent ambiguity against the insurer. *Id.* (citing *Ayers*, 237 F.Supp.2d at 768; *Bituminous Cas. Corp. v. RPS Co.*, 915 F. Supp. 882, 883-84 (W.D. Ky. 1996); *Peoples Bank & Trust Co. v. Aetna Casualty & Surety Co.*, 113 F.3d 629 (6th Cir. 1997); *St. Paul Fire & Marine Ins. Co. v. Powell-Walton-Milward, Inc.* 870 S.W.2d 223 (Ky. 1994); *Eyler v. Nationwide Mut. Fire Ins. Co.*, 824 S.W.2d 855, 859 (Ky. 1992); *Motorists Mutual Ins. Co. v. RSJ, Inc.*, 926 S.W.2d 679, 680 (Ky. App. 1996)).

## DISCUSSION

The Plaintiff has asked this Court to grant it a Declaration of Rights, stating that the workers' compensation benefits which it will pay to Jimmie Bristoe, Terry Pehm, Terry Goldsmith, Billy Townsend, and Sylvester Hale, above the $250,000 SIR for each claim, are the responsibility of Old Republic and/or Wexford under the Old Republic policies, and that any such payments above the $250,000 SIR will be promptly reimbursed to AGC-SIF under the terms of the policies.

The issue of what constitutes proper "immediate notice" under the Old Republic policies is the linchpin of each party's argument. Old Republic asserts that it is not responsible to indemnify AGC-SIF for the benefits paid in excess of the $250,000 SIR for each of the five claims because AGC-SIF did not provide Old Republic with immediate (proper and timely),

6

notice as to each claim as it was so contractually obligated.  In response, the Plaintiff argues that the Quarterly Reports, and other correspondence when it comes to Mr. Hale's claim, which L&H sent to Old Republic constituted adequate notice under Part 8 of the policies, "Administration and Reporting of Claims."

AGC-SIF emphasizes that Part 8 provides certain "triggering events" that require it to provide notice to Old Republic via Wexford, but the policies do not dictate the form or manner in which notice should be provided.  The introductory paragraph of Part 8 states:

> The Insured shall be responsible for the investigation, settlement, defense or appeal of any claim made or suit brought, or proceeding instituted against the Insured and *shall give immediate notice* to Wexford Underwriting Managers upon learning of any of the following...(emphasis added).

Thus, the policies require AGC-SIF, through its third party administrator L&H, to give Wexford "immediate notice" of excess claims upon certain events, but there is no language dictating the form that the "immediate notice" must take.  Old Republic makes no assertion to the contrary.

The adequacy of the Quarterly Reports are the crux of the matter when it comes to the instant motion for summary judgment for four of the five claims; Mr. Hale's claim was never included on a Quarterly Report.  Old Republic argues (1) AGC-SIF, through L&H, did not provide "immediate notice" as required by the policies, because the Quarterly Reports do not constitute such notice; (2) the Court should presume prejudice to Old Republic because the alleged notice was so untimely; and (3) in the alternative, should the Court decline to presume prejudice, it has been prejudiced by L&H's failure to report the five claims in a timely manner in compliance with the policies' requirements.

In response, AGC-SIF argues (1) Old Republic cannot prove that notice through the Quarterly Reports was not sufficient, as the policies are silent as to what constitutes "immediate

7

notice" and the form in which that notice should be submitted; and (2) even if Old Republic proves that notice through the form of Quarterly Reports was not sufficient, it cannot establish that it was reasonably probable that it suffered substantial prejudice as a result of the insufficient notice.

## 1.  Notice

Part 8 of the Old Republic policies lists certain "triggering events."  Upon the occurrence of any one of these events, AGC-SIF, through L&H, "shall give immediate notice to Wexford." These events are:

(a) any claim, suit or proceeding that appears to involve indemnity by the Company;

(b) any occurrence, claim, award or proceeding judgment which exceeds 50% of the Retention stated in Item 5 of the Declarations;

(c) any occurrence which causes injury to two or more employees;

(d) any case involving:
    (1) amputation of a major extremity;
    (2) brain or spinal cord injury;
    (3) death;
    (4) disability for a period of nine months or more;
    (5) permanent total disability as defined in the Workers' Compensation Act of the applicable state named in Item 3 of the Declarations;
    (6) any second or third degree burn of 25% or more of the body.

(e) the reopening of any case in which further award might involve liability of the Company.

However, Part 8 does not dictate the form or manner in which notice should be provided, nor does it define "immediate notice."  Thus, according to AGC-SIF, L&H utilized the Quarterly Reports to provide notice to its excess carriers of claims for which they may have been liable to indemnify AGC-SIF.

### A.  What are the Quarterly Reports?

8

L&H utilized and relied upon the Quarterly Reports to provide notice of excess claims to all of AGC-SIF's excess insurers, including Old Republic.  Prior to 1994, L&H compiled a report on a quarterly basis in order to provide updates to AGC-SIF's excess carriers on particular claims.  These Quarterly Reports were the only information conveyed to any excess carrier on a regular basis prior to 1994.  Each Quarterly Report was one report organized by policy year in chronological order, and each report was sent to every excess carrier.  AGC-SIF contracted with different excess insurers for different years, and only contracted with Old Republic for the policy periods of March 14, 1987, through March 14, 1998, and March 14, 1988, through March 14, 1989.

AGC-SIF asserts that the Quarterly Reports contained, at a minimum: (1) identity of the claimant and claim number; (2) identity of the claimant's employer; (3) identity of the insured; (4) the date of the injury; (5) the type of injury; (6) the reserved medical expenses; (7) the paid medical expenses; (8) the reserved worker's compensation; (9) the paid worker's compensation; (10) the reserved legal expenses; (11) the paid legal expenses; and (12) a summary of the status of the claim.  AGC-SIF also states that the summary of the each claim often times provided the insurer with additional information regarding L&H's pursuit of settlement, ALJ proceedings, and reasons for increased medical and/or worker's compensation expenses.

In 1994, Wexford sent a letter to L&H requesting a specific form to be used for reporting to excess carriers.  However, neither party has attached this letter or the form to the summary judgment pleadings.  After the receipt of this letter, AGC-SIF states that L&H changed the way it reported excess claims.  Prior to that time, AGC-SIF maintains that it was never provided any guidance as to what an excess carrier required, but was only provided with the criteria of which

9

to report and when to report, but not how to report claims.

AGC-SIF and L&H have no firsthand information regarding whether L&H communicated with Old Republic about any of the five claims, either through a Quarterly Report or another type of correspondence, prior to the February 1989 fire at L&H's offices, as most of L&H's records were destroyed in that fire.  However, in the deposition of Mary Margaret Sutherland, L&H's Vice President, Ms. Sutherland stated that L&H is in possession of the December 31, 1988 Quarterly Report, which appears to have survived the fire.

All of the claims, except for Mr. Hale's, were at some point included on multiple Quarterly Reports, and all five have been the subject of other assorted written correspondence between the parties.  The Court will summarize the pertinent facts of each claim, below.  It is important to note that AGC-SIF's arguments are based on its assertion that the Quarterly Reports constitute adequate notice under the Old Republic policies, while Old Republic's arguments are based on *its* assertion that the reports are *not* adequate notice, and that AGC-SIF should have provided some other type of notice of the claims, but failed to do so.

### i. Jimmie Bristoe

Mr. Bristoe was injured on August 19, 1987 when he was struck in the head with a high pressure hose.  He was included on the March 31, 1989, Quarterly Report, but there is no way of knowing if he was included on an earlier report due to the February 1989 fire.  However, the summary of Mr. Bristoe's claim in the March 31, 1989, Quarterly Report states "virtually no change since last QR," indicating that this was not the first Quarterly Report L&H sent to Old Republic regarding Mr. Bristoe.   AGC-SIF asserts that while one the Old Republic "triggering events," in Part 8(b), requires a claim to be reported once it reached 50% of the self-insured

retention (SIR), or $125,000, L&H was more conservative, and reported MR. Bristoe's claim on March 31, 1989, well before the claim reached 50% of SIR.

Mr. Bristoe's claim appears on Quarterly Reports dated June 30, 1989; October 2, 1989; December 29, 1989.  The latter report states that the claim was lump sum settled and there would be no further reporting.  Then, in a letter dated May 21, 2004, Kristi Goldener, an L&H claims adjuster, sent Old Republic a letter regarding his claim, triggered by an increase in Mr. Bristoe's medical expenses.  The claim then appeared on the June 30, 2004, Quarterly Report as a result of an increase in Mr. Bristoe's medical reserves.

Old Republic argues that Mr. Bristoe's injury was a brain injury, as listed in Part 8(d)(2), which should have triggered the immediate reporting requirements.  In response, AGC-SIF argues that Mr. Bristoe did not have an injury to his brain, and that under the express language of the policies, L&H was not immediately required to report his claim.  At the latest, Old Republic argues, the claims should have been reported in 1999 when the reserves on the claim exceeded 50% of the SIR, as required by Part 8(b).  In response, AGC-SIF argues that prior to 1999, L&H had already notified Old Republic of the claim via four different Quarterly Reports, the last of which indicated there would be no further reporting on the claim because L&H did not believe it would reach the SIT.  Old Republic also takes issue with the fact that L&H did not notify it of the status of Mr. Bristoe's claim for about fourteen years.

### ii.  Terry Pehm

Mr. Pehm was injured on June 6, 1988, when he fell from a ladder while working, crushing both heels and injuring his ankles.  Temporary total disability benefits were paid from June 6, 1988 through April 14, 1989.  On April 3, 1991, an administrative law judge (ALJ) found

Mr. Pehm to be totally disabled, and on April 24, 1992, the Workers' Compensation Board approved the ALJ's findings.  L&H and Mr. Pehm then submitted a settlement of $110,000 to the ALJ for approval, but on July 20,1992, the ALJ refused to approve the settlement.  AGC-SIF states that as a result of this failure to settle, Mr. Pehm's claim was included on the September 30, 1992, Quarterly Report, showing that the reserves and payments totaled to date exceeded 50% of the SIR.  The claim was included on Quarterly Reports through March 31, 2004.

On April 26, 2005, Dina Green, claims supervisor for L&H, sent a letter to James Kolenda, claims manager for Old Republic, asking for Old Republic's position on Mr. Pehm's claim.  Mr. Kolenda replied that Old Republic could not evaluate its potential exposure and would not be able to consider reimbursement for Mr. Pehm's claim.  It is this letter that Old Republic maintains constitutes the first appropriate notice of Mr. Phem's claim, which AGC-SIF asserts is unbelievable because for thirteen years it included the claim on Quarterly Reports with much more detailed information that than contained in the letter.

Old Republic maintains that Mr. Pehm's claim should have been reported around March 1989 when the period of temporary total disability exceeded nine months, pursuant to Part 8(d)(4).  In response, AGC-SIF argues that the policy required AGC-SIF to provide notice of "any disability for a period of nine months or more," and disability is not defined in the policy. Further, AGC-SIF argues that the statutory definition of "disability" at the time did not included temporary total disability benefits (TTDB); thus, L&H had no obligation to report that Mr. Pehm received TTDB.

### iii.  Terry Goldsmith

Mr. Goldsmith was injured in a fall on June 10, 1987, when a platform on which he was

standing collapsed.  AGC-SIF states that when his claim reached 50% of the SIR, it was included on the December 30, 1988 Quarterly Report.  Mr. Goldsmith's claim was included on the March 31, 1989, June 30, 1989, and October 2, 1989 Quarterly Reports.  The latter indicated that L&H settled the worker's compensation portion of his claim, leaving only the medical portion open.  Thus, L&H adjusted the reserves, brining the total amount of the claim below 50% of the SIR, and stated in the report that the claim would not be further reported.

AGC-SIF states that on February 15, 2006, as a result of an increase in the cost of Mr. Goldsmith's medical treatments, Barbara Taylor, an L&H claims adjuster, wrote Mr. Kolenda with information regarding the increase.  Old Republic makes much of the fact that Ms. Taylor states in the letter that this is the first time the claim had been reported, but AGC-SIF argues that this is clearly a mistake on the part of one claims adjuster, and is in no way proof that the Quarterly Reports did not constitute notice under the policies.  It is this letter that Old Republic argues constitutes the first notice of the Pehm claim, but Old Republic asserts the letter was inadequate and in contravention of the notice provisions of the policies.

### iv.  Billy Townsend

Mr. Townsend was injured on January 24, 2989, when he fell from a ladder onto a concrete floor, causing compound fractures in both of his heels.  AGC-SIF states that the reserves for Mr. Townsend's claim did not exceed $38,000 (well below 50% of the SIR) until May 27, 1992, when an ALJ found that Mr. Townsend was entitled to total occupational disability benefits.  At that point, L&H increased the indemnity reserves for his claim by approximately $200,000.  His claim was then included on the June 30, 1992, Quarterly Report, and on every subsequent report through December 31, 2004.

13

Old Republic maintains that its first notice of Mr. Townsend's claim is in the form of an April 26, 2005, letter from Dina Green.  In that letter, Ms. Green states that the claims has previously been submitted through the Quarterly Reports, but that Mr. Kolenda had indicated that this was not sufficient.  She concludes by asking Mr. Kolenda to provide her with his position regarding coverage and acceptance of the claim, and to let her know if additional information was needed.  His response, dated May 5, 2005, directs her to the insurance policy for L&H's  duties regarding claims reporting.  It does not give her more specific directions.

### v.  Sylvester Hale

Mr. Hale was injured on May 10, 1988, when he suffered carbon monoxide poisoning while sawing through concrete with a gas concrete saw.  His claim was never included on a Quarterly Report.  On December 12, 1989, an ALJ awarded Mr. Hale temporary total disability benefits from May 10, 1988, to October 10, 1988, at the rate of $180.83 per week, followed by $466.00 per month "for so long as he is disabled, which represents 60% occupational disability, apportioning 50% to the defendant-employer and 50% to the Special Fund."

AGC-SIF states that while Mr. Hale's claim exceed 50% of the SIR in December, 2001, his claim was not reported because the increase in his reserves was based on a "worst case scenario," and at $177,039.39, was "barely over the 50% SIR."  AGC-SIF argues that is failure to report Mr. Hale's claim at this time is excused because his claim "would have never reached the $250,000 triggering Old Republic's excess coverage."

However, in August 2006, Mr. Hale's reserves were again increased, and it was at this time that L&H first believed that the reserves were at a level that would trigger Old Republic's coverage.  AGC-SIF argues that L&H provided immediate notice of this increase through a letter

14

from Dina Green to Mr. Kolenda dated August 14, 2006.

Old Republic argues that Mr. Hale's claim should have been reported in December 2001, when the reserves first hit 50% of the SIR, and the August 14, 2006, letter is in contravention of the notice provisions and terms of the policies, Part 8(b).

## B. The dispute over the value of the Quarterly Reports

### i. The Quarterly Reports as a form of notice

Old Republic argues that the Quarterly Reports the reports do not constitute adequate notice of the five claims because they contain only statistical data concerning the amount of benefits, costs and expenses paid for a particular claimant and the claimant is identified by name and date of injury, but the reports are not specific as to policy period or excess carrier. Therefore, it argues, minimum claimant information is reported on all pending claims to all excess carriers providing a policy of excess insurance to AGC-SIF for any policy period.  Old Republic asserts this is problematic because each Quarterly Report is very large, the last report of the type being 263 pages.  Old Republic argues that it should have received distinct notice of each claim, and requiring it to look for information applicable to its excess insurance policies in Quarterly reports is unreasonable

The problem with Old Republic's dismissal of the value of the Quarterly Reports is that Old Republic has not cited any law, any correspondence between the parties where Old Republic stated to AGC-SIF or L&H that "immediate notice" must contain these items, or any historical exchange of information between the parties that contained the information Old Republic deems to constitute adequate notice.

AGC-SIF argues that as the policies provided no guidance regarding "immediate notice,"

15

L&H issued this notice through the Quarterly Reports when a Part 8 "triggering event" occurred. AGC-SIF asserts that the Quarterly Reports contain much more information that the various letters that Old Republic argues constitute the first notice of the claims, including (1) identity of the claimant and claim number; (2) identity of the claimant's employer; (3) identity of the insured; (4) the date of the injury; (5) the type of injury; (6) the reserved medical expenses; (7) the paid medical expenses; (8) the reserved worker's compensation; (9) the paid worker's compensation; (10) the reserved legal expenses; (11) the paid legal expenses; and (12) a summary of the status of the claim.

While Old Republic argues that the Quarterly Reports were too voluminous or unspecific, AGC-SIF counters that they are actually simple to understand.  The reports organize claims in chronological order, and the two policies between AGC-SIF and Old Republic cover March 14, 1987, through March 14, 1988, and March 14, 1988, through March 14, 1989.  AGC-SIF argues that, assuming Old Republic knew the years of its polices, it only needed to turn through the report to the cover page reading, for example, "Pending Claims Incurred at $125,000.00 or More 50% of Retention Fund Year 1987 From 03/14/1987 Through 03/13/1988.  Behind that cover page, Old Republic would have found the reports for Mr. Pehm and Mr. Townsend.

### ii.  The Quarterly Reports as "immediate notice"

Part 8 of the policies states that the insured, AGC-SIF, shall give "immediate notice" to Wexford upon learning of a claim involving one of the listed triggering events.  As previously stated, the policies do not provide a definition of "immediate notice."  AGC-SIF argues that as it has demonstrated that there is a genuine issue of material fact as to whether the Quarterly Reports constituted notice of four of the five claims in issue, there is no need to consider whether

16

L&H provided "immediate notice."  AGC-SIF further asserts that upon a finding that such reports constituted sufficient notice, there would be no dispute that immediate notice was provided, as the reports were issued only a few weeks after the triggering events set forth in the policies.

Old Republic argues that the Quarterly Reports did not provide notice of any kind, and instead considers the various letters sent from L&H claims adjusters, discussed above, to be the first proper notice of the various claims.  Thus, it argues that, even under a forgiving objective standard of reasonableness, L&H's notice to Old Republic at such late dates cannot be fairly said to have been given within a reasonable time after the triggering events.  *See Zenith Ins. Co. v. Employers Ins. of Wausau*, 141 F.3d 300, 306 (7th Cir. 1998).  Without applying an objective standard of reasonableness, Old Republic argues that the language of the policies was clear and unambiguous and did not leave the timing of notice to L&H's discretion.

The Court believes that the issue of "immediate notice" is necessarily intertwined with the basic issue of whether the Quarterly Reports were an appropriate form of notice.  Whether L&H provided "immediate notice" of each of the five claims will require a particularized inquiry into each claim, but this inquiry will only be possible if the trier of fact first determines that the Quarterly Reports were a permissible form of notice.

Mr. Hale's claim was never included on a Quarterly Report.  However, AGC-SIF argues that L&H provided immediate notice of this claim in August 2006, via letter, when the claim's reserves were increased to a level that L&H believed would trigger Old Republic's coverage.  Old Republic counters that the claim was immediately reportable by December 2001, at which time the reserves exceeded 50% of the SIR.  Neither party provides much more information on

Mr. Hale's claim than these basic facts.

**C.  Is Old Republic entitled to summary judgment?**

Given everything discussed above, the Court finds there exists a genuine dispute between the parties on the issue of material fact, and summary judgment is therefore inappropriate. *Moinette*, 90 F.3d at 1177.

Further, the Court is faced with multiple opposing experts whose opinions are all admissible.  The Court has already ruled that the opinions of the Plaintiff's experts Ken D. Howard and C. Stephen Taylor may not be excluded (Docket Nos. 127, 129).  Thus, the Court must ignore the Defendants' arguments that are based upon the inadmissibility of those opinions.

Mr. Howard's opinion is that the Quarterly Reports "were done in the appropriate and timely fashion as required" by the policies and that AGC-SIF "operated in a good faith attempt to provide [Old Republic] with accurate and timely reports on those cases that were deemed to have the potential of impacting" the excess insurance policies.  Mr. Howard's expert report states that AGC-SIF gave adequate notice on the claims in issue, with the possible exception of Mr. Hale's claim, because he felt he did not have enough information to adequately evaluate the case.

Mr. Taylor's testimony is, in part, that the Quarterly Reports contain "information more substantial" than the required notice information identified by Hon. David W. O'Brien (Judge O'Brien), the Defendants' expert witness.  Mr. Taylor's review of Judge O'Brien's expert report leads him to conclude that, contrary to Judge O'Brien's conclusion, "L&H met the reporting requirements" under the terms of the excess insurance policies in question, as those policies were

described to him by AGC-SIF's counsel.

In contrast, Judge O'Brien, whose testimony has not been challenged by the Plaintiff, opines that Old Republic was not given notice of any of the claims when it should have been provided notice under the terms of the policies.  His opinion is that the Quarterly Reports did not constitute notice under the terms of the policies.

Given these opposing opinions, and the parties' dispute over (1) the Quarterly Reports as a notice form; (2) the "immediate notice" standard; (3) the timing of "triggering events" that led L&H to include the claims on certain Quarterly Reports; and (4) the notice provided for Mr. Hale's claim, the Court believes that there exists such genuine issues of material fact that summary judgment must be **DENIED**.

## 2. Prejudice

While the Court believes there exist genuine issues of material fact so as to render summary judgment inappropriate, the parties' pleadings evince a fundamental disagreement about the appropriate prejudice standard that must be applied if the trier of fact determines that Old Republic did not receive "immediate notice" of the claims, in violation of Part 8 of the policies.  If the trier of fact determines that AGC-SIF did not provide Old Republic with the type of "immediate notice" required by the policies, but instead provided Old Republic with some type of delayed notice, Old Republic may not be able to deny coverage for the claims if was not prejudiced by the delay.  *See Jones v. Bituminous Casualty Corp.*, 821 S.W.2d 798, 801 (Ky 1991) ("...an insurer cannot withdraw coverage on the ground that a notice condition has not been met unless the insurer can show that it was prejudiced by the act of the insured.").  Therefore, the Court will address the parties' prejudice arguments so that they may be apprised

19

of the appropriate prejudice standard in this case.

Old Republic argues that in Kentucky, prejudice should be presumed where notice of a loss is untimely.  In contrast, AGC-SIF argues that prejudice may not be presumed, and must instead be shown by the insurer.

In the past, "Kentucky courts strictly construed notice requirements contained in insurance policies and held that compliance with such provisions was considered to be a condition precedent to the insured being able to recover under the policy."  *Old Republic Ins. Co. v. Underwriters Safety & Claims, Inc.*, 2007 U.S. Dist. LEXIS 83490, at *11-12 (W.D. Ky. Nov. 8, 2007) (citing *Reserve Ins. Co. v. Richards*, 577 S.W.2d 417, 419 (Ky. 1979); *Aetna Casualty & Sur. Co. Of Hartford, Conn. v. Martin*, 377 S.W.2d 583 (Ky. 1964).  This changed in 1991 when the Supreme Court of Kentucky, in *Jones v. Bituminous Casualty Corp.*, 821 S.W.2d 798 (Ky 1991), "ruled that an insurer may not deny coverage because an insured failed to provide prompt notice of loss unless the insurer can prove that it is reasonably probable that it suffered substantial prejudice from the delay in notice." *Id.* at *12 (citing *Jones*, 821 S.W.2d at 802-03). "Summary judgment is appropriate on the issue of prejudice only where proof of prejudice is conclusive or there is failure of proof on the subject."  *Motorists Mut. Ins. Co. v. Post*, 2005 U.S. Dist. LEXIS 24415, at *6 (E.D. Ky. Oct. 20, 2005).

The *Jones* decision remains the standard in Kentucky for notice issues under insurance policies.  *Id.* at *7.  This is despite the decision in *Hiscox v. Wilson*, 246 F. Supp. 2d 684, 692 (E.D. Ky. 2003), where the issue, in the context of a first party equine insurance policy, was "whether an insureds' failure to provide 'immediate notice' to its insurer allowed the insurer to deny liability."  *Id.*  The *Hiscox* court refused to follow *Jone*s because of a unique combination

20

of facts specific to that case.  *Id.*

The Defendants attempt to use *Hiscox* to discredit this Court's use of the *Jones* standard in analyzing the issue of notice in this case, and argue that, as in *Hiscox*, the Court should revert to the pre-1991 standard for notice requirements.  Their argument, however, is without merit, as both this District and the United States District Court for the Eastern District of Kentucky have recently declined to follow *Hiscox*.  *See Old Republic*, 2007 U.S. Dist. LEXIS 83490, at *14[1]; *Post*, 2005 U.S. Dist LEXIS 24415, at *7.

The *Hiscox* decision has been distinguished and limited to its facts.  *Post*, 2005 U.S. Dist LEXIS 24415, at *7.  First, the insurance policy at issue in *Hiscox* had "clear, unambiguous terms stating that 'immediate notice' was a 'condition precedent' to insurer liability.  *Id* (citing *Hiscox*, at 689, 692).  "Second, the insurance contract at issue in *Hiscox* was not a contract of adhesion, as the insured was able to negotiate some of the terms."  *Id*. (citing *Hiscox*, at 692).  Finally, the *Hiscox* court "recognized that the insurance policy in that case was for unique risk equine coverage and required a different analysis than that which would be required for general liability insurance."  *Id.* (citing *Hiscox*, at 693-94).

Therefore, in this case, if the trier of fact finds that the Quarterly Reports, and the notice of Mr. Hale's claim, were notice "immediate notice" under Part 8 of the policies and instead finds that AGC-SIF, through L&H, provided some type of delayed notice, the *Jones* standard

---

[1]In this recently decided action, Old Republic filed a declaratory judgment action in this District's Louisville Division seeking a determination that the failure of both the City of Louisville and its TPA to comply with the notice provisions of the excess workers compensation insurance policy issued by Old Republic relieved it of its obligation to indemnify the City under the policy for payments associated with the workers' compensation claim of one of the City's employees.  Old Republic urged the Court to follow *Hiscox* and presume prejudice; the Court declined.

should be employed for determining whether Old Republic was prejudiced by that delay.  Old Republic, as the insurer, shall bear the burden of proving that it is reasonably probable that it suffered substantial prejudice from the delay in notice.  *See Old Republic*, 2007 U.S. Dist. LEXIS 83490, at *14; *Post*, 2005 U.S. Dist LEXIS 24415, at *7; *Jones*, 821 S.W.2d at 802-03.

The parties make further arguments as to whether Old Republic actually suffered prejudice by any alleged delay.  However, it is not necessary for the Court to address the merits of these arguments at this time.  Indeed, it is impossible for the Court to do so as there is a genuine issue of material fact concerning the preliminary issue of notice.  Thus, the Court declines to delve further into the prejudice analysis beyond articulating the appropriate prejudice standard.

## CONCLUSION

For the foregoing reasons, the Defendants' Motion for Summary Judgment is **DENIED**. An appropriate order shall issue.

22